USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 97-1054 PINE TREE MEDICAL ASSOCIATES, Plaintiff - Appellant, v. SECRETARY OF HEALTH AND HUMAN SERVICES, ET AL., Defendants - Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Morton A. Brody, U.S. District Judge] ____________________ Before Torruella, Chief Judge, Campbell, Senior Circuit Judge, and Boudin, Circuit Judge. _____________________ Michael A. Duddy, with whom Kozak, Gayer, & Brodek, P.A. was on brief for appellant. Allison  C.  Giles, Attorney, Civil Division, Department of Justice, with whom Frank  W.  Hunger, Assistant Attorney General, Jay P.  McCloskey, United States Attorney, and Anthony  J. Steinmeyer, Attorney, Civil Division, Department of Justice, were on brief for appellees. ____________________ September 16, 1997 ____________________ TORRUELLA, Chief  Judge. Pine Tree Medical Associates ("Pine Tree") brought a suit for injunctive and declaratory relief against the Secretary of the Department of Health and Human Services ("the Secretary") and the Director of the Bureau of Primary Health Care (collectively, "HHS") challenging HHS's denial of Pine Tree's application requesting that Farmington, Maine be designated a "medically underserved population" ("MUP") under the Public Health Service Act ("PHSA"), 42 U.S.C. S 254b  et seq. (1997 Supp.). HHS had denied Pine Tree's MUP application after applying criteria and standards that were issued by HHS in June 1995 ("the 1995 Guidelines"). Pine Tree contends that the standards in existence at the time that its application was first filed are the ones that should have been applied, and that Farmington merits MUP status under those standards. On appeal, Pine Tree repeats two legal arguments that were rejected, on summary judgment, by the district court: 1) that the 1995 Guidelines violated the notice and comment provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. S 553 (1996), and the PHSA, formerly codified at 42 U.S.C. S 254c(b)(4)(B) (1991) (subsequently repealed); and 2) that the application of the 1995 Guidelines to Pine Tree's May 18, 1995 application was impermissibly retroactive. We find the first claim to be moot, and affirm the district court's holding on the retroactivity claim. BACKGROUND The pertinent facts were stipulated below, and are reviewed in the district court's opinion. See Pine  Tree  Med. -2- Assocs. v.  Secretary of Health & Human Servs. , 944 F. Supp. 38, 40- 41 (D. Maine 1996). A brief overview will serve the purposes of this appeal. Pine Tree is a nonprofit corporation that provides primary health care services in Farmington, Maine. It sought MUP status for the low income population of Farmington in a May 18, 1995 application to HHS. Pursuant to the PHSA, a health care provider that serves a MUP may qualify for substantial, cost-based reimbursement under Medicare and Medicaid programs. The PHSA directs the Secretary to establish criteria and standards for determining whether to grant MUP status, and prescribes,  inter  alia, that one such criterion be "the ability of the residents of an area or population group to pay for health services." See 42 U.S.C. S 254b(b)(3)(B) (Supp. 1997) (formerly codified at 42 U.S.C. S 254c(b)). In 1976, following notice and comment, regulations were adopted regarding the factors to be taken into consideration by the Secretary, and these regulations have been periodically revised by the HHS without opportunity for notice and comment. In 1994, the HHS issued, without notice and comment, Summary Procedures for MUP designation. It is not disputed that Farmington qualified for MUP designation under the 1994 Procedures. The 1995 Guidelines, issued on June 12, 1995, again without notice and comment, revised the 1994 Procedures. At the time the 1995 Guidelines were issued, HHS had not yet acted on Pine Tree's May 18, 1995 application. Under the 1995 Guidelines, which altered the measurement of poverty levels by increasing the size of the overall population to be considered in the poverty calculus, -3- Farmington was found not to qualify for MUP designation, and Pine Tree's application was denied on June 22, 1995. On August 4, 1995, Pine Tree filed a request for reconsideration, which the HHS denied on December 8, 1995. In an explanatory letter, HHS informed Pine Tree that because the 1995 Guidelines "included a correction of analytic distortion with regard to how the poverty factor was determined," this revision was applied immediately to pending requests. See Stipulated Facts q 16.  On January 8, 1996, Pine Tree sued the defendants, seeking that the 1995 Guidelines be declared invalid for failing to comply with the notice and comment provisions of the APA and the PHSA and, in the alternative, seeking a declaration that the 1995 Guidelines were impermissibly applied retroactively to Pine Tree's application. Pine Tree also sought an order enjoining defendants from applying the 1995 Guidelines and requiring HHS to designate Farmington a MUP based on the standards in effect at the time it filed the application. On October 21, 1996, the district court held that under the notice and comment provision of the PHSA -- which has since been repealed by Congress -- the 1995 Guidelines were valid despite a lack of notice and comment, because they did not modify the HHS's initial 1976 regulation, and because the 1994 Procedures, which the 1995 Guidelines did indeed modify, were not regulations. See  Pine  See infra. -4- Tree  Med.  Assocs., 944 F. Supp. at 42. The district court also held that the 1995 Guidelines fell within the ambit of the APA's explicit exception to the notice and comment requirement for interpretive rules. Id. at 43;  cf. 5 U.S.C. S 553(b)(3). Finally, the district court held there were no valid retroactivity issues raised by the application of the 1995 Guidelines to Pine Tree's pending application. DISCUSSION We review de novo a district court's grant of summary judgment. Ionics v. Elmwood  Sensors,  Inc., 110 F.3d 184, 185 (1st Cir. 1997). I. Mootness of Notice and Comment Claim On appeal, Pine Tree does not argue that the 1995 Guidelines are something other than "interpretive rules" under section 553(b)(3) of the APA, see Brief for Appellant at 9 ("The interpretive rule exception is not relevant to this case"), but rather argues that the interpretive rule exception is inapplicable because, under the APA, an exception to the interpretive rule exception exists where "notice or hearing is required by statute." 5 U.S.C. S 553(b). Thus, Pine Tree's claim turns on the existence of any notice and hearing requirement that is applicable to the 1995 Guidelines under the PHSA. Unfortunately for Pine Tree, Congress deleted the notice and comment provision from the former PHSA, which was codified at 42 U.S.C. S 254c(b)(4)(B), when it  Section 254c(b)(4)(B) formerly stated: -5- enacted the Health Centers Consolidation Act, Pub. L. No. 104-299, effective October 1, 1996. See 42 U.S.C. S 254c historical and statutory notes (Supp. 1997). In the wake of this repeal, there is no language under the PHSA relating to notice and comment for modifications of the MUP criteria. Thus, as a practical matter, even were we to disagree with the district court today, and conclude that the 1995 Guidelines were invalid for failing to provide for notice and comment pursuant to the former PHSA, as the law is today HHS can simply re-issue identical guidelines without notice and comment. Given the fact that the briefs, arguments of counsel, and the record in this case reveal a firm belief on the part of HHS that the 1995 Guidelines corrected a significant error in the previous 1994 Procedures, we do not doubt that, were the 1995 Guidelines struck down, Pine Tree would find itself no closer to its desired end, namely the application of the 1994 Procedures to its MUP application. This practical matter becomes crystal clear in light of our discussion,  infra, of Pine Tree's retroactivity claim, where  The Secretary may modify the criteria established in regulations issued under this paragraph only after affording public notice and an opportunity for comment on any such proposed modifications. Although the Health Centers Consolidation Act initially stated that it would be effective October 1, 1997, see Pub. L. No. 104- 299, S 5, 1996 U.S.C.C.A.N. 3645, that effective date was later changed by the Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104-208, S 521, 1996 U.S.C.C.A.N. 187, to October 1, 1996. Cf. 42 U.S.C. S 233 historical and statutory notes (Supp. 1997). -6- we hold that Pine Tree was not entitled to have the 1994 Procedures apply to their application by virtue of their filing date. An issue becomes moot if intervening events leave the parties without a "legally cognizable interest" in our resolution of the issue, Powell v. McCormack, 395 U.S. 486, 496 (1969), as when "intervening events make it impossible to grant the prevailing party effective relief,"  Burlington N. R.R. Co. v.  Surface Transp. Bd., 75 F.3d 685, 688 (D.C. Cir. 1996). The issue of whether the HHS's 1995 Guidelines violated the then applicable notice and comment provision of the PHSA is mooted by Congress's repeal of that provision. A finding in favor of Pine Tree would bring it no closer to its desired end, and thus, with regard to this claim, we do not find before us a true case or controversy within our jurisdiction. See U.S. Const. art. III, S 2, cl. 1. II. The Retroactivity Claim Pine Tree argues that Congress has not granted the Secretary the power to issue retroactive rules. Certainly, in the absence of an express statutory grant of authority to promulgate retroactive regulations, the retroactive application of an agency rule is disfavored. Bowen v.  Georgetown Univ. Hosp. , 488 U.S. 204, 208 (1988). However, in this case Pine Tree places undue significance on the act of filing an application with an administrative agency. It argues that by applying criteria that were issued after it had filed a MUP application, the HHS has created a retroactivity problem of the kind discussed in Landgraf v.  USI Film Prods. , 511 U.S. 244 (1994).  See  Landgraf, 511 U.S. at -7- 280 (stating that a statute wields retroactive effect where it would "impose new duties with respect to transactions already completed"). We agree with the district court that the mere filing of an application is not the kind of completed transaction in which a party could fairly expect stability of the relevant laws as of the transaction date. The concern that retroactive laws threaten stability and impair the ability of entities to coordinate their actions with respect to the law surely is not implicated where what is at issue is the analysis of certain poverty levels in a geographic location. Pine Tree obviously could not have adjusted poverty levels in Farmington in due regard to the change in MUP guidelines. We therefore affirm the district court's finding that Pine Tree had no right to have the guidelines that existed at the time they submitted a MUP application applied to their application rather than new guidelines adopted prior to the review of their application.  Only one case has been called to our attention that suggests that the act of filing an application with an agency can trigger retroactivity concerns. See Boston Edison Co. v. Federal Power Comm'n , 557 F.2d 845 (D.C. Cir. 1977). In that case, it was held that an agency could not apply new requirements for application filing to applications filed before those requirements were issued. See id. at 849 (Federal Power Commission could not apply new rule barring data over four months old in rate application to application filed before new rule was issued). Boston  Edison is readily distinguishable from the instant case. -8- There is an obvious difference between rejecting an application because it fails to meet a new regulation governing the proper format or preparation of applications that was promulgated after that application was filed, and rejecting an application because the substantive standards for granting the application on the merits have changed in the period between filing and review. Whereas in the former case, parties have been deprived of fair notice as to the application method, and indeed have taken an action -- the filing of a certain kind of application -- to which the regulation retroactively applies, in the latter, as discussed above, fair notice and retroactivity concerns are not raised. Pine Tree thus has mustered no support, nor can we find any support, for the proposition that filing an application with an agency essentially fixes an entitlement to the application of those substantive regulations in force on the filing date.  It is worth noting that this is not a case in which new MUP criteria have been applied so as to retroactively overturn a prior grant of MUP status for a period in the past. Cf. Association of Accredited Cosmetology Schs. v.  Alexander, 979 F.2d 859, 865 (D.C. Cir. 1992) (holding that schools' expectation for future eligibility for a program is not a vested right triggering retroactivity concerns but noting that there may be retroactivity problems were new rules applied to undo past determination of eligibility). Rather, HHS applied the 1995 Guidelines prospectively, to applications for future MUP designations. CONCLUSION -9- For the reasons stated in this opinion, the district court's grant of summary judgment is affirmed. -10-