971 So.2d 837 (2007)
Sara ROSENSHEIN, Appellant,
v.
FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 3D07-989.
District Court of Appeal of Florida, Third District.
October 24, 2007.
Rehearing Denied December 5, 2007.
*839 Lawrence R. Metsch, Miami, for appellant.
Javier A. Ley-Soto, for appellee.
Before GERSTEN, C.J., and GREEN and SUAREZ, JJ.
SUAREZ, J.
Sara Rosenshein appeals from an administrative decision of the Department of Children and Families (DCF) to terminate her Medicaid Institutional Care Program payments because of excess income. We affirm.
Mrs. Rosenshein is a ninety-four-year-old widow in long-term nursing home care in North Miami Beach. She receives $814.20 in monthly social security, and receives Institutional Care Program (ICP) benefits from Medicaid. Both of those payments go directly to the nursing home. She also receives approximately $1,400 per month from a long-term care insurance policy, which she purchased in 1992. In 2006, during a routine review of her case, DCF became aware of the monthly insurance payment, which Mrs. Rosenshein had not reported as income on the advice of the nursing home business manager. DCF's Medicaid ICP specialist determined that the insurance payments were income and that Mrs. Rosenshein's gross available monthly income was actually $2,260.66, which exceeded DCF's monthly income limit of $1,809. DCF notified her that she was thus no longer eligible for Medicaid ICP and that it would terminate her benefits in October 2006. Mrs. Rosenshein appealed and argued that the insurance payments should not be counted as income in the ICP eligibility and payment process because this income is not listed in any state or federal regulation governing the program. The Hearing Officer concluded that DCF correctly included the insurance payment as unearned income in determining Mrs. Rosenshein's ICP eligibility, and upheld termination of her ICP nursing home benefits. She appeals the Hearing Officer's decisions and argues that he erred when he held that the monthly long-term insurance care payments were to be counted as income in determining her eligibility for Medicaid ICP benefits.
Federal regulations classify income as earned or unearned.[1] 20 C.F.R. §§ 416.1120-1124 describe "unearned income" and list some of the sources of unearned income that are exempt from being counted as "income" for purposes of social security eligibility. As indicated by Social Security Administration policy, the list of benefits enumerated by the Social Security Act is not all-inclusive. Each general category of unearned income is specified in the federal statute, but the federal statute is not a complete itemization of every possible type of unearned income under each category and it states as much. See id. The federal rules set forth broad categories, while the state administrative rules and regulations more specifically define the range and types of income, both earned and unearned. The parties here do not dispute that the long-term *840 care insurance proceeds qualify as unearned income; the issue is whether the private insurance payment is "countable" unearned income or exempted unearned income for purposes of Medicaid ICP eligibility.
Since Medicaid is a means-tested program, beneficiaries must meet specific asset and income criteria. Applicants with some savings will be required to "spend down" assets on long-term care services, that is, Medicaid will assume the cost of long-term care only after the applicant has exhausted most personal and private sources of funding. See 42 U.S.C. § 1396 (Medicaid spend-down provisions); Leocata ex rel. Gilbride v. Wilson-Coker, 343 F.Supp.2d 144, 149 (D.Conn.2004) ("Because Medicaid only covers categorically needy persons, individuals do not become eligible for Medicaid assistance until they `spend down' their private assets below an income ceiling set by state statute."), aff'd sub nom. Leocata v. Leavitt, 148 Fed. Appx. 64 (2d Cir.2005).
Under DCF's long-term care insurance guidelines, the private long-term care insurance income is not exempt, but must be counted for purposes of determining Medicaid eligibility. DCF's internal Transmittal document[2] describes the difference between an insurance "reimbursement" for actual medical expenses and an insurance payment of a flat rate without regard to per diem charges from an institution. The former is exempt unearned income, and the latter is not. Mrs. Rosenshein's monthly $1,400 long-term care insurance benefit is a flat rate payment and is thus not exempt unearned income. Therefore, the Hearing Officer was correct in holding that the payments Mrs. Rosenshein receives from her long term insurance are included as income when determining her eligibility for ICP Benefits.
The Appellant next argues that DCF Transmittal No. P02-01-0002 is invalid and the DCF Hearing Officer could not rely on it because it had not been promulgated as a rule pursuant to Section 120 of the Florida Statutes. We find the *841 Appellant's arguments to be unpersuasive. The DCF memorandum is a valid agency interpretation of the federal rules regarding unearned income and more specifically sets forth what unearned income can be excluded from income calculation. The memo is, as its purpose indicates, a clarification of existing policy "regarding treatment of cash payments received from a long-term care insurance policy." Numerous federal cases support the conclusion that the DCF memo is a permissible agency interpretation. See, e.g., Pine Tree Med. Assocs. v. Sec'y of Health & Human Servs., 944 F.Supp. 38 (D.Me.1996) (Holding guidelines that updated criteria to be considered in medically underserved population designations were interpretive rules, and thus the Secretary could issue guidelines without providing notice or opportunity for comment; guidelines merely clarified regulations promulgated pursuant to the Public Health Service Act), aff'd, 127 F.3d 118 (1st Cir.1997). Additionally, the Hearing Officer in the final order relied primarily on federal regulations regarding the appellant's unearned income and relied on the Transmittal only as additional support.
In her Reply, the appellant refers to section 409.9102 of the Florida Statutes, enacted in 2005, but this section is not applicable. This section creates a partnership between certain insurance companies offering long term care policies and the State.[3] The language of exemption does not appear in that statute until the 2006 amendment, and only applies to long-term care insurance issued or renewed on or after July 31, 2006, and only then with a "company offering approved long-term care partnership program policies." Furthermore, that section was enacted to encourage persons to purchase private long-term care insurance in order to reduce the public financial burden on Medicaid. This runs counter to the Appellant's argument that her long-term nursing care insurance should not be counted as a factor contributing to her long term care costs.
Medicaid ICP has been paying for Mrs. Rosenshein's nursing home expenses, following the income guidelines set forth by federal statute and state regulations based on her initial disclosure of social security income. Medicaid ICP paid the difference between what Mrs. Rosenshein receives in social security and what the nursing home charges for her residency. However, Mrs. Rosenshein has also been receiving a heretofore undeclared $1,400 monthly from her long-term care insurance. Adding the insurance payment to her social security gives Mrs. Rosenshein about $2,200 a month of income. This put Mrs. Rosenshein over the $1,800 income limit for Medicaid ICP eligibility. The DCF Hearing Officer correctly concluded that because Rosenshein's unearned income does not qualify under any specific exclusion, it must be treated as countable unearned income for purposes of determining Medicaid *842 eligibility.[4] The Hearing Officer was correct in his interpretation of relevant law and we must affirm.
Affirmed.
NOTES
[1] A nursing home may receive reimbursement from the Medicaid program prior to receiving payment from any third party insurer. The nursing home must pay the Department any funds it receives from third party insurers in excess of the amounts it is entitled to receive under the Medicaid program and must repay the Medicaid program for any funds already received for the service. In accord with federal regulations, the Department then reimburses itself and the federal government for their expenditures under the program. The remaining funds are then turned over to the individual recipient of health care services and are treated as either income or resources for purposes of Medicaid eligibility. See 42 C.F.R. § 433.154.
[2] Transmittal No. P02-01-0002, dated January 17, 2002, Long Term Care Insurance Payments. The Transmittal in pertinent part states:

The purpose of this memorandum is to clarify policy regarding treatment of cash payments received from a long-term care insurance policy.
General: Cash received in conjunction with medical services may or may not be considered as income. Because there are so many different types of insurance available, it is important for staff to carefully review the terms of each policy to determine whether or not payments received should be included in the Medicaid eligibility and patient responsibility budgets. Policy regarding treatment of medical insurance payments may be found in HRSM 165-22, passages 1850.10.06 and 3220.05.15.
Reimbursements: Cash received to reimburse an individual for actual medical expenses incurred is not considered income, even if the individual chooses to receive the payment directly instead of assigning it to a provider. If the insurance policy pays an individual up to a maximum amount per day during a nursing home stay, it is not considered income as the payments are based on actual expenses incurred. A policy that pays actual expenses up to a certain maximum payment is not the same as a flat rate policy described in the following paragraph.
Flat Rate Payments: Cash from an insurance policy which pays a flat rate benefit to the client without any regard for actual per diem charges or expenses incurred is considered income. If the insurance policy pays an individual a fixed amount daily regardless of the actual daily facility charges, it is considered a flat rate payment and included as income. The payments from a flat rate policy are not restricted for payment of medical expenses as a set amount is paid even if it exceeds the actual charges.
[3] "The federal and state governments have developed tax and economic policies to discourage reliance on Medicaid and encourage reliance on private resources. These incentives, which are discussed in detail in subsequent sections, include federal and state income tax deductions for the cost of long-term care insurance, Medicaid partnership programs to encourage the use of private insurance to pay for the minimum duration of care, and federal and state tax incentives for families that provide in-home care to loved ones. These initiatives appear to be producing the desired short-term behavioral outcome: increasing numbers of Americans are purchasing long-term care insurance, and in-home care remains a viable option within many families." Diane Lourdes Dick, Tax and Economic Policy Responses to the Medicaid Long-Term Care Financing Crisis: A Behavioral Economics Approach, 5 Cardozo Pub.L. Pol'y & Ethics J. 379, 383 (Winter 2007). [e.s.]
[4] We note that this problem could have been avoided, and perhaps still can be, by the Medicaid applicant placing the insurance income into a qualified trust instrument to which Medicaid ICP would have a lien. The trust vehicle would act to take the insurance funds out of the applicant's Medicaid-countable income stream, he or she would become eligible for ICP benefits, and Medicaid would be repaid from the trust funds.