# United States Court of Appeals
## For the First Circuit

No. 00-1898

GOWEN, INC.,

Plaintiff, Appellee,

v.

F/V QUALITY ONE, IN REM; NUNYA, INC., IN PERSONAM;

Defendants, Appellants.
_____

RESOURCE TRADING COMPANY,

Claimant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

Before

Boudin, Circuit Judge,

Bownes, Senior Circuit Judge,

and Lynch, Circuit Judge.

William H. Welte with whom Welte & Welte, P.A. was on brief for appellants.
Michael Kaplan with whom Preti, Flaherty, Beliveau, Pachios & Haley, LLC was on brief for plaintiff.

BOUDIN, Circuit Judge. This case involves a question of first impression as to the scope of maritime liens. Gowen, Inc., brought the action in December 1999 in federal district court against the vessel F/V Quality One and her owner, Nunya, Inc. Gowen sought to recover debts owed for wharfage and repair, and sought relief in rem against the vessel and in personam against the owner. Federal Maritime Lien Act, 46 U.S.C. §§ 3141-43 (1994). The amount sought, with interest through November 23, 1999, was just under $12,000, plus unspecified costs of collection and attorney's fees. The vessel was arrested pursuant to a warrant commanding the seizure of "her equipment, engines, and appurtenances."

After Nunya failed to answer Gowen's complaint, Gowen secured an entry of default and then a default judgment establishing liability. Fed. R. Civ. P. 55(a), (b). Upon entry of the default judgment, Gowen promptly moved for sale of the vessel, including specifically her fishing permits and history, which Gowen's motion argued were appurtenances of the vessel. No opposition was filed. On February 29, 2000, the court ordered a public sale of the vessel, including "any valid

-2-

fishing permits and history to the extent permitted by applicable law."  The permits, as more fully explained below, are federal permits allowing restricted use of the vessel for the fishing of specific species.  See, e.g., 50 C.F.R. § 660.336(b) (2000); Sea Watch Int'l v. Mosbacher, 762 F. Supp. 370, 373 & n.1 (D.D.C. 1991).[1]

After local advertising the vessel was sold at auction on March 15, 2000, by representatives of the United States Marshals Service.  Seven or eight bidders attended, as did the captain of the vessel.  Prior to the bidding, the captain told those present that the sale was being challenged legally and that the permits would not be transferred with the vessel.  Only two bids were then made:  one by Gowen for $16,000, and the other by Andrew Todd for $17,000.  Todd's bid was accepted. Under the terms of the auction, Todd paid the $17,000 sale price that same day.

Gowen moved on March 27, 2000, for confirmation of the sale, and for the first time counsel for the vessel and owner appeared and opposed the motion.  The opposition disputed inter

---

[1]The fishing or catch history is a record of fish caught by the vessel over time (usually measured in yearly increments). It is used to determine whether the vessel qualifies for a permit and what the vessel's permit allows.  Consistent with the practice of the district court and the parties, we sometimes refer to the permits alone when both the permits and the corresponding fishing history are meant.

*alia* the inclusion of the permits and the fairness of the price. The district court then held an evidentiary hearing, in which it heard testimony from five witnesses. The court later received briefs from both sides. On June 14, 2000, the court issued a decision upholding the sale and ruling that the permits and history were included as appurtenances. Gowen, Inc. v. F/V Quality One, 2000 A.M.C. 2225, 2229, 2233 (D. Me. 2000). Thereafter, the Marshal provided a bill of sale to Todd.

1. Nunya and the F/V Quality One have now appealed from the confirmation of sale and the decision that the sale includes the permits and history. Although interlocutory (the proceeds have not yet been divided), the confirmation order is appealable. 28 U.S.C. § 1292(a)(3) (1994). Nevertheless, Gowen has argued that the appeal should be dismissed, for mootness or lack of jurisdiction, because the appellants allowed the sale to be completed without seeking a stay. This means, says Gowen, that no effective relief is now possible since Todd owns the vessel and permits and Todd is not even a party to the case.

The problem raised by Gowen is common enough in a number of different contexts. See, e.g., Oakville Dev. Corp. v. F.D.I.C., 986 F.2d 611, 613 (1st Cir. 1993) (mortgage foreclosure sale); Anheuser-Busch, Inc. v. Miller (In re Stadium Mgmt. Corp.), 895 F.2d 845, 847-48 (1st Cir. 1990) (bankruptcy).

-4-

Here, it is sufficient to defeat any claim of mootness that a reasonable chance of effective relief would remain if we were persuaded to reverse the district court. For example, a ruling that the fishing permits were not transferred would be possible. Only if it were indisputable that no form of relief could be provided would a mootness claim lie. Pine Tree Med. Assocs. v. Sec'y of Health & Human Servs., 127 F.3d 118, 121 (1st Cir. 1997).

Obviously, any relief that nullified the sale or stripped out the permits could raise issues of fairness and reliance, and there is an interest in making court-ordered auctions viable. See Munro Drydock, Inc. v. M/V Heron, 585 F.2d 13, 14 (1st Cir. 1978). But in the ordinary case, these are arguments against relief or particular types of relief--not proof that relief is impossible. It is only in an extreme case (e.g., a completed complex reorganization, cf. Rochman v. Northeast Utils. Serv. Group (In re Pub. Serv. Co. of N.H.), 963 F.2d 469, 472-76 (1st Cir.), cert. denied, 506 U.S. 908 (1992)), that the failure to seek a stay might be deemed fatal at the outset.

Alternatively, Gowen says that appellants waived their objections, or that laches applies, because they did not oppose the default, default judgment, or motion for sale, and did not

seek a stay of the confirmation order. No obvious reason exists why either default (entry or judgment) should bar an objection to the adequacy of the auction price; the fairness of the sales price could hardly be an issue prior to the sale. By analogy, failure to contest a default judgment for an unliquidated sum does not automatically bar a dispute as to damages. See Fed. R. Civ. P. 55(b)(2); cf. Sony Corp. v. Elm State Elecs., Inc., 800 F.2d 317, 321 (2d Cir. 1986).

On the other hand, the failure to object in advance to inclusion of the permits could be deemed fatal to an appeal on that issue. This is not because of the default judgment; the complaint did not specifically mention the permits nor does a default judgment automatically preclude all challenges, in subsequent stages of the same case, to the legal premises of the complaint.[2] It is because after the default but before the sale Nunya knew from the terms of the motion that Gowen sought to include the permits in the sale and did nothing to object to this inclusion in court prior to the sale.

---

[2]The default judgment is conclusive as to facts but does not always defeat later legal objections. Bonilla v. Trebol Motors Corp., 150 F.3d 77, 80 (1st Cir. 1998) (defaulted party able to argue failure to state a claim), cert. denied, 526 U.S. 1098 (1999); Dierschke v. O'Cheskey (In re Dierschke), 975 F.2d 181, 185 (5th Cir. 1992) (entertaining a defaulted party's argument that relief was beyond that requested in the complaint).

Although the complaint did not request anything more specific than the arrest, attachment, and sale of the F/V Quality One and the attachment and sale of other unspecified property of Nunya, the duly served motion for an order of sale explicitly sought to include the permits and history as "appurtenances" to be sold. No objection was filed on behalf of appellants. Thereafter, the court's order specifically designated the permits and history as items to be sold at the auction to the extent legally permitted; although there were more than two weeks between the order and the sale, again no objection was filed by appellants.

It seems to us that once appellants knew that the order of sale was intended to sell the fishing permits and history, they had an obligation to make a timely objection to the district court. Cf. Reilly v. United States, 863 F.2d 149, 160-61 (1st Cir. 1988). Under the District of Maine's local rules, objections to the motion for an order of sale were waived if they were not filed within ten days after the filing of the contested motion, D. Me. R. 7(b) (2000) (the period was recently increased to 21 days). Appellants did not file any objection in the more than three weeks between Gowen's motion and the date when it was granted.

-7-

Nonetheless, although the obligation to make timely objections is worth stressing for the benefit of future litigants, we do not rely upon it in this case. When the district court ordered that the sale include the permits, it said that this inclusion was "to the extent permitted by applicable law," arguably reserving the issue for later disposition. And the district court decided on the merits the issue of whether the permits were properly included. Under these circumstances, we decline to decide the dispute based solely on waiver or laches.

2. Under maritime law, a maritime lien against the vessel and its appurtenances arises for certain liabilities, including wharfage and repairs, and the vessel can be arrested and sold to satisfy such liens. See generally Gilmore & Black, The Law of Admiralty ch. IX (2d ed. 1975). It was on that doctrinal premise that the sale in this case took place. If the permits were appurtenances, they were subject to the lien and passed with the sale of the vessel; if not, they were merely personal property of the owner, like a desk in a steamship company office. 2 Benedict on Admiralty § 32, at 3-3 (7th ed.

2000) ("The term 'vessel' includes its apparel and appurtenances.").[3]

Traditionally, a maritime lien attaches not only to the bare vessel but also to equipment that is used aboard the vessel and is "essential to the vessel's navigation, operation, or mission." Gonzalez v. M/V Destiny Panama, 102 F. Supp. 2d 1352, 1356 (S.D. Fla. 2000); see also United States v. F/V Sylvester F. Whalen, 217 F. Supp. 916, 917 (D. Me. 1963). Although a vessel's fishing permits generally must be kept "on board," 50 C.F.R. § 648.4(l), the rights themselves are what matter, and they are intangible. The question, not often mooted, is whether a maritime lien applies to intangibles that play a role similar to the vessel's equipment.

There is no general objection to treating an intangible as an appurtenance. On the contrary, freight charges due on account of a vessel's carriage of cargo are subject to maritime liens against the vessel. United States v. Freights of the Mount Shasta, 274 U.S. 466, 469-70 (1927) (Holmes, J.); 29 Moore's Federal Practice § 705.01[6][d], at 705-21 (Coquillette et al. eds., 3d ed. 2000). Appellants point out that the

---

[3]Here, Gowen sought an in personam judgment against Nunya and might eventually have levied on its non-appurtenant property, but a maritime lien is enforced by different procedures and governed by different substantive rules. See Gilmore & Black, supra, §§ 9-1, 9-2, 9-19.

majority view is that insurance proceeds due on cargo loss or damage are not subject to maritime liens.[4]  However, the reasons for this do not turn on the intangible character of the proceeds but on history and on conceptual concerns peculiar to insurance. See note 4.

"The determination [whether something is an appurtenance] is commonly made on a case-by-case basis without great consistency of results."  1 Schoenbaum, Admiralty and Maritime Law § 9-1, at 489 (2d ed. 1994).  There being no authoritative answer as to how fishing permits should be classed, we must ask whether treating such permits as subject to maritime liens advances the objectives for which such liens were created and, if so, whether there are overriding objections to the contrary.  A familiar purpose of such liens is to make readily available to a mobile borrower the secured credit that is often necessary to ensure that a vessel can obtain the basic supplies or services needed for its operation.[5]

_____

[4]See Gilmore & Black, supra, § 9-19, at 622 n.80 (citing conflicting cases). Compare Farland v. T & T Fishing Corp., 626 F. Supp. 1136, 1140-41 (D.R.I.), vacated on other grounds, 808 F.2d 1513 (1st Cir. 1986), and A.M. Bright Grocery Co. v. Lindsey, 225 F. 257, 260-61 (S.D. Ala. 1915), with The Conveyor, 147 F. 586, 592-93 (D. Ind. 1906).

[5]Stewart & Stevenson Servs., Inc. v. M/V Chris Way MacMillan, 890 F. Supp. 552, 562 (N.D. Miss. 1995); Bavely v. Wandstrat (In re Harbour Lights Marina, Inc.), 146 B.R. 963, 971 (Bankr. S.D. Ohio 1992), aff'd, 153 B.R. 781 (S.D. Ohio 1993);

Because of declining fishing stocks, federal law now elaborately regulates catches for many types of fish through a network of statutory provisions, regulations, and agreements too complicated to summarize. See, e.g., Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. §§ 1801-83 (1994); 50 C.F.R. ch. VI (1999). In practical terms, the "vessel permits" at issue in this case reflect rights to fish for certain species for a certain number of days each year. See 50 C.F.R. pt. 648. For present purposes, what matters is that vessels like the F/V Quality One are valuable significantly, and sometimes almost entirely, because of their permits.

Testimony during the district court hearing made clear that the F/V Quality One's permits contributed substantially to the vessel's value, although there was disagreement as to what the vessel was worth standing alone and how much more the permits contributed. Documents indicated that the permits included a multispecies permit (for certain northeastern species listed in the regulations) and several other permits for individual species. Neither at the hearing nor on appeal has either side distinguished among the permits.

Thus, not only the market value but the creditworthiness of the fishing vessel may well depend on its

29 Moore's Federal Practice, supra, § 705.01[1], at 705-7.

permits quite as much as on its engine, physical dimensions, and navigation equipment. Maritime liens underpin the extension of credit to fishermen, and this mechanism for ready credit would be impaired by excluding from the lien the permits that allow vessels to carry on their accustomed fishing activities. Thus, in the large, fishermen seeking repairs and supplies on credit are likely to benefit from treating a vessel's permits as appurtenances.

The benefits should not be overstated. Maritime liens are mostly "secret," because (ship mortgages aside) there is no registry system for such liens. 2 <u>Benedict on Admiralty</u>, <u>supra</u>, § 24, at 2-16; Gilmore & Black, <u>supra</u>, at 588. Furthermore, the general rule with maritime liens is that, among liens of "equal rank," later liens have priority. 2 <u>Benedict on Admiralty</u>, <u>supra</u>, § 51, at 4-4. No one offering credit for supplies or repairs can be certain just how many higher-priority creditors will be standing in line when collection is sought. But presumably common knowledge may supply the equivalent of a credit rating for a fisherman based for years in, or regularly visiting, the same community.

From the standpoint of policy, no obvious arguments exist against treating the permits as subject to lien. We have assumed, as appellants assert, that the permits could in some

circumstances be severed from the vessel upon its sale and retained by its old owner. But courts have repeatedly upheld maritime liens upon "severable" equipment, including, surprisingly enough, equipment merely leased to the owner. Stewart & Stevenson Servs., Inc. v. M/V Chris Way MacMillan, 890 F. Supp. 552, 561 (N.D. Miss. 1995) ("components of a vessel, even though readily removable," may be appurtenances); F/V Sylvester F. Whalen, 217 F. Supp. at 917 (leased fathometer and radar equipment); 2 Benedict on Admiralty, supra, § 32, at 3-3 to 3-5; 1 Schoenbaum, supra, § 9-1, at 488-89.

Nor is there any indication that upholding the lien here would upset settled expectations. There is no evidence of any common understanding in the maritime world that permits are, or are not, subject to liens. Nor is there much precedent. The only circuit case on point assumed without discussion that permits were subject to liens, but the issue was not actively litigated. Bank of Am. v. Pengwin, 175 F.3d 1109, 1119 (9th Cir.), cert. denied, 528 U.S. 872 (1999). Here, as elsewhere with new issues, the case law probably has to form expectations rather than reflect them.

Appellants point out that Congress has recently provided by statute for the Secretary of Commerce to create a registry system for a large class of fishing permits,

Sustainable Fisheries Act, Pub. L. No. 104-297, § 110(d), 110 Stat. 3559, 3590-92 (1996) (codified at 16 U.S.C. § 1855(h) (Supp. II 1996)). The statutory provision in question, 16 U.S.C. § 1855(h), contains language that could be used to argue that the registry system will preempt any use of maritime liens against fishing permits:

> Such registration shall constitute the <u>exclusive means of perfection</u> of title to, and security interests in, such permits, except for Federal tax liens thereon . . . .

16 U.S.C. § 1855(h)(3) (Supp. II 1996) (emphasis added). Indeed, a subsequent subsection of the registry statute defines "security interest" to "include security interests, assignments, liens and other encumbrances of whatever kind." <u>Id.</u> § 1855(h)(4).

What appellants tellingly omit is the preceding sentence, which reads as follows:

> To be effective and perfected against any person <u>except the transferor</u>, its heirs and devisees, and persons having actual notice thereof, all security interests, and all sales and other transfers of [certain fishing] permits . . . , shall be registered in compliance with the regulations promulgated . . . .

<u>Id.</u> § 1855(h)(3) (emphasis added). Placement suggests that the claimed exclusivity, even if it applies to maritime liens, does not apply to the perfection of a security interest against the

-14-

transferor of that interest--in this case, Nunya.  Thus, we need

not resolve Gowen's claim that maritime liens are not

encompassed within section 1855(h)'s definition of security

interests, because (allegedly) "[a] maritime lien, so-called, is

not a lien at all in the common law sense of the term," Gilmore

& Black, supra, § 9-1, at 586.

More important, the registration system is not yet

established, because regulations to implement it are still not

in force.  Sometimes new legislation indicates how Congress

would wish a problem to be solved absent the statute or its

implementing regulations, Ballard Shipping Co. v. Beach

Shellfish, 32 F.3d 623, 631 (1st Cir. 1994), but the statutory

provisions that appellants cite do not do this.  The legislation

would create a different means of achieving a security interest

in fishing permits; this tells us nothing about how Congress

would wish the matter to be handled where no registry system yet

exists.

Congress's provision for "transition" to the registry

system, which appears as a note in the United States Code, is

more illuminating.  See Sustainable Fisheries Act, Pub. L. No.

104-297, § 110(e), 110 Stat. at 3592 (codified at 16 U.S.C. §

1855 note).  Congress's transition provision states:

> Security interests on permits [within the
> ambit of the registry] that are effective

and perfected by otherwise applicable law on the date of the final regulations implementing [the registry] shall remain effective and perfected if, within 120 days after such date, the secured party submits evidence satisfactory to the Secretary of Commerce and in compliance with such regulations of the perfection of such security.

Id. The transition provision indicates that Congress intended for security interests "effective and perfected by otherwise applicable law" to remain so at least until the establishment of the registry.[6]

3. Appellants argue at length that the auction price for the vessel was unfairly low with or without the permits. A district court should disallow a court-ordered sale where the price is grossly inadequate, "at least where the interests of creditors do not point in a different direction." Munro Drydock, Inc. v. M/V Heron, 585 F.2d 13, 14-16 (1st Cir. 1978). Necessarily, "[w]hat is grossly inadequate . . . is a judgment call which does not lend itself to firm guidelines, for the circumstances involved are so varied." 29 Moore's Federal Practice, supra, § 706.02[7][b], at 706-22 to -23. Here, the

---

[6]Appellants cite to us a letter from an officer of the National Marine Fisheries Service that might be read to say that the statutory provisions preempt maritime liens even in the absence of the registry. Since Congress has "directly spoken" to this issue, any contrary agency interpretation cannot stand. Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984).

-16-

district court took evidence, analyzed the testimony, and concluded that the sale price was not grossly inadequate. The district court's judgment on such an issue would normally be reviewed under a deferential standard and, to the extent raw facts were involved, reversed only for clear error. United States v. Howard (In re Howard), 996 F.2d 1320, 1327-28 (1st Cir. 1993).

The district court's discussion of the value issue, like the rest of its opinion, is cogent and persuasive. We have discussed the lien issue in detail because it is a legal question of first impression, although the core of our reasoning on this issue tracks that of the district court. However, the value issue is fact-specific, and we readily rely on the district court's reasoning and conclusions to find that the auction was fair and the price received not grossly inadequate.

Some might think that the value issue should not even be reached because the former captain's conduct went far to frustrate the possibility of a better sale price. Cf. Campaniello Imports, Ltd. v. Saporiti Italia S.P.A., 117 F.3d 655, 662 (2d Cir. 1997) (general equitable principle that a claimant may not seek relief from a situation for which the claimant is to blame). However, so far as it was not obstreperous (it may have been in part), one might in the

-17-

ordinary case defend the captain's conduct as giving fair notice to other bidders that the permit issue would be litigated; on the other hand, the failure to raise the issue in court before the auction somewhat compromises this argument. It is enough here that the district court's treatment of the captain's conduct seems to us reasonable.

This case has been well litigated on both sides. The issue is both novel and difficult. We <u>affirm</u> the judgment but direct that each side shall bear its own costs on the appeal.

<u>It is so ordered.</u>